**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| **ERNEST VILLA MARQUEZ,** | § | |
| *Plaintiff* | § | |
| | § | **MO-24-CV-00009-DC** |
| **v.** | § | |
| | § | |
| **SHERIFF MIKE GRIFFIS; MICHAEL** | § | |
| **GARDNER, COMMISSIONER;** | § | |
| **NURSE SHELLY JHONSON;** | § | |
| **CAPTAIN JAMES MCKINNEY; RN** | § | |
| **ROBIN MCCULLOUGH; NURSE** | § | |
| **ATTICUS MOSE; ECTOR COUNTY,**[1] | § | |
| *Defendants* | § | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
**[DOCKET NUMBER 116]**

Before the Court is Plaintiff Ernest Villa Marquez's (Plaintiff) 42 U.S.C. §1983 (§1983) civil rights Complaint, as well as his Responses to this Court's Order for More Definite Statement [docket number 1, 4, 5, & 9].

On March 22, 2024, Defendants filed an Answer to Plaintiff's Complaint. [docket number 17]. On March 26, 2024, the Court entered a Scheduling Order for dispositive motions. [docket number 18]. On May 15, 2024, this Court entered a Second Scheduling Order since neither side had responded to the first. [docket number 27]. On June 14, 2024, Defendants filed their Motion for Summary Judgment. [docket number 34]. On June 21, 2024, Plaintiff filed his Motion for Summary Judgment. [docket number 35]. On June 26, 2024, Plaintiff filed his Response in Opposition to Defendants' Motion for Summary Judgment. [docket number 36].

On August 1, 2024, Plaintiff filed his second Amended Complaint. [docket number 38]. On August 2, 2024, this Court mooted the pending Motions for Summary Judgment and

---

[1] When Plaintiff filed his third Amended Complaint [docket number 92], the Court issued an Order to the Clerk of the Court terminating all the Defendants he had omitted from his final version [docket number 96]. Plaintiff never objected to the termination of Defendants Hodgkins, Reyes, or Warner, and cannot now add Defendant Hodgkins back into this case by including her name in his Motion for Summary Judgment. [docket number 122].

Defendants' Motion to Stay Discovery because of Plaintiff's second Amended Complaint. [docket number 40]. That same day, this Court entered an Amended Order for Service and Advisory. [docket number 41]. On September 11, 2024, Defendants filed their Motion for Leave to File their Motion to Dismiss and Answer, which this Court construed as a Motion for Summary Judgment. [docket numbers 45, 46, 47, & 48]. On September 20, 2024, Plaintiff filed his Response to Defendants' Motion for Summary Judgment. [docket number 49].

On October 1, 2024, Plaintiff filed his Memorandum in Opposition to Defendants' Motion for Summary Judgment. [docket number 52]. On October 14, 2024, Defendants filed their Memorandum in Support of their Motion for Summary Judgment. [docket number 55]. The Court then entered an Order for Clarification of Defendants to Plaintiff. [docket number 56]. On October 30, 2024, Plaintiff filed two different Responses to this Court's Order for Clarification of Defendants. [docket numbers 65 & 66].

On November 6, 2024, this Court granted Defendants' Alternative Motion for a More Definite Statement. [docket number 67]. On November 20, 2024, Plaintiff filed his Objection to having to file a more definite statement. [docket number 72]. On November 25, 2024, this Court overruled Plaintiff's Objection and re-Ordered a More Definite Statement. [docket number 73]. On December 2, 2024, Plaintiff filed his Response to the Order for a More Definite Statement. [docket number 75]. On December 6, 2024, Plaintiff filed another Response to this Court's Order for a More Definite Statement. [docket number 79].

On December 10, 2024, Plaintiff moved for leave to file another Amended Complaint. [docket number 80]. On December 12, 2024, Defendants filed a Motion to Stay Discovery. [docket number 83]. On December 13, 2024, this Court dismissed Plaintiff's Motion for Leave to

Amend without prejudice. [docket number 84]. That same day, this Court granted Defendants' Motion to Stay Discovery. [docket number 86].

On January 3, 2025, Plaintiff filed his third Amended Complaint. [docket number 92]. On January 17, 2025, this Court mooted the pending Motions for Summary Judgment and Motion for Discovery because of Plaintiff's third Amended Complaint. [docket number 95]. That same day, this Court directed the Clerk of the Court to terminate the Defendants who Plaintiff had specifically left out of his third Amended Complaint. [docket number 96]. On January 24, 2025, this Court entered a third Order for Service and Advisory. [docket number 97]. On March 5, 2025, Defendants filed their Answer to Plaintiff's third Amended Complaint. [docket number 108]. On March 7, 2025, this Court entered a Scheduling Order for dispositive motions. [docket number 109]. On April 4, 2025, Defendants filed their Motion for Summary Judgment. [docket number 116]. Defendants' Motion for Summary Judgment was followed by Plaintiff's own May 19, 2025–Motion for Summary Judgment. [docket number 122]. This case is now ripe for disposition.

## I.    Background and claims raised

Plaintiff was a pretrial detainee at the Ector County Detention Center (ECDC) when the actions underlying this lawsuit took place. Plaintiff has since been convicted and sentenced to 37-years of imprisonment for DWI 3rd or More in the Texas Department of Criminal Justice's Jordan Unit in Pampa, Texas.

Defendants are Sheriff Mike Griffis, Ector County Commissioner Michael Gardner, Captain James McKinney, Nurse Robin McCullough, Nurse Shelly Jhonson, Nurse Atticus Mose, and Ector County, Texas. Plaintiff alleges that Defendants acted with deliberate indifference to his dental needs for 8 months because of a policy which meant detainees had to

pay for their own medical and dental care. He also claims the Tylenol and aspirin given to him

over those 8 months for tooth pain caused him to develop Hepatitis C, which Ector County also

refused to test for or treat during his detention. Plaintiff also says he is suing each Defendant in

their official capacities only. "Plaintiff has brought this action against all defendants in [their]

official capacity." [docket number 122 at 1] (clarification added).

5. PLAINTIFF ERNEST Villa MARQUEZ, INITIATED This 42 U.S.C. § 1983
ACTION while he WAS A PRETRIAL DETAINEE, AT [ECDC] COUNTY Jail.
ALLEGING THAT DEFENDANTS ACTED WITH DELIBERATE INDIFFERENCE TO
his SERIOUS medical NEEDS by DEPRIVING him of EFFECTIVE
dental CARE IN Violation of THE EIGHTH AMENDMENT . . .

[*Id.*].

DEFENDANT #(1): OFFICIAL POSITION (SHERIFF) MIKE GRIFFIS
IS THE SHERIFF OF ECTOR COUNTY, AND FAILS TO CARRY OUT
his RESPONSIBILITIES AS TO PROVIDING ADEQUATE MEDICAL CARE
by MAKEING AND MAINTAINING A POLICY [004.002 (a)]
AND AS NOT TO HAVEING ADEQUATE STAFF. BECAUSE PLAINTIFF
WENT SOMETHING LIKE 8 MONTHS THAT THIS POLICY CAUSED
THE INJURY IN which IT EFFECTED PLAINTIFFS daily ACTIVITIES
PLAINTIFF had TO EAT WITH ONE SIDE OF his MOUTH because of
THE BROKEN TOOTH, SUFFERING RESULTING FROM denial
OF MEDICAL CARE AND DEPRIVATION OF MEDICAL CARE
ALL IN which PLAINTIFF WAS left IN PAIN INTEL

(SHERIFF) DEFENDANT MIKE GRIFFIS FINALLY SIGNED
OFF TO PAY FOR THE PLAINTIFFS TOOTH TO be REMOVED.
ON OCTOBER 7, 2024, PLAINTIFF IS TRYING TO get his
MEDICAL RECORDS TO PROVE AND Show FACTS. . IN his
MEDICAL RECORDS . . DEFENDANT had ACTUAL KNOWLEDGE
OF AN OBJECTIVELY CRUEL CONDITION AS TO A SERIOUS
MEDICAL NEED.

[docket number 92 at 8].

DEFENDANT #7: OFFICIAL POSITION (COMMISSIONER) MICHAEL GARDNER is THE COMMISSIONER OF ECTOR COUNTY And FAILS TO CARRY OUT his RESPONSIBILITIES AS TO PROVIDING ADEQUATE medical CARE by MAKING A POLICY [004.002(d)] AS TO NOT HAVEING DENTAL CARE AT THE ECTOR COUNTY LAW ENFORCEMENT CENTER This POLICY THAT DEFENDANT MAINTAINES Caused THE INJURY TO PLAINTIFF FROM THE DEPRIVATION OF medical CARE All IN which PLAINTIFF ERNEST V. MARQUEZ WAS left IN PAIN INTEL (SHERIFF) MIKE GRIFFIS Also A defendant That MAINTAINES THE SAME POLICY [004.002(d)]. DEFENDANT has ACTUAL Knowledge OF NOT HAVEING ** DENTAL CARE ** AT THE ECDC.

[docket number 92 at 4].

DEFENDANT #7: (ECTOR COUNTY And) COMMISSIONER IN his OFFICIAL POSITION: MICHAEL GARDNER AT All TIMES DEFENDANT holding and MAINTAINING A POLICY [004.002(d)] AT THE [ECDC] AS NOT TO HAVE DENTAL and FAILS his RESPONSIBILITIES AS TO have PROPER medical CARE AT THE [ECDC] but INSTEAD TO SAVE MONEY FOR the COUNTY MAINTAINES THIS Policy And And VIOLATES THE RIGHTS TO INMATES Such AS THE PLAINTIFF AT hand. IN which LEAD TO INJURY And SUFFERING TO PLAINTIFF'S well-being.

[*Id.* at 17].

According to Plaintiff, the policy, [004.002(d)], lead to his "denial of treatment for (Hepatitis C)…failure to provide the Plaintiff's request to admit the Plaintiff and take (Hepatitis C) blood test. The test was requested by Plaintiff on such date: 05-25-2022." [*Id.* at 14] (parentheticals in original).

e. Plaintiff's Defendant #5, <u>Shelly Jhonson (Jones)</u> is accused of maintaining a policy [004.004(d)] that caused Plaintiff's tooth-related injury, for not having adequate staff to take x-rays, for telling Plaintiff that he would need to pay for dental care, and for prescribing magic mouthwash, aspirin, and Tylenol, which aspirin and Tylenol use allegedly caused Plaintiff to contract Hepatitis C [docket number 92, pages 10 & 16].

[docket number 116 at 3] (policy cite mislabeled by Defendants, Plaintiff's cite is [004.002(d)]).

Ector County claims it has no such named policy, [004.002(d)]. Instead, Defendants produced a written policy for Ector County that does not appear to discriminate based on an inmate's ability to pay for such services.

G. If inmate dental care / services (s) cannot be performed at the ECDC; it shall be the responsibility of the nursing director or his/her assistant to make arrangements for service/treatment as soon as is necessary for the inmates(s) well being. The nursing director or his/her assistant may choose to follow their protocol for contacting the family for dental care if this does not delay service/treatments immediately required or places the inmate(s) in harm's way. Medical administrative staff are authorized to have inmate (s) commissary account debited for dental and/or medical services and medications if the inmate (s) family or the inmate does not have the resources to pay for services/treatments. No inmate (s) shall be delayed/denied receiving dental services/treatments, medical services/treatments due to their or their family's inability to pay.

[*Id.* at 156].

## II.    Relief sought

Plaintiff, in his third Amended Complaint, asked this Court for the following as relief in this case:

A. AWARD COMPENSATORY damages in the Following Amounts:

1. $100,000 Jointly And SEVERALLY Against DEFENDANTS. GRIFFIS, MCKINNEY, MCCullough, HodgKins, JHonson, Mose, And Gardner For The Physical And Emotional Injuries sustained As A Result of the denial And deprivation of Medical care.

2. $10,000 Jointly And severally against All defendants ~~For~~ For the deprivation of Liberty And Amenity, And Emotional injury.

3. $50,000 Jointly And SEVERALLY Against All DEFENDANTS For the Physical And Emotional injury Resulting From their Failure To provide Adequate Medical care To the Plaintiff.

4. AWARD PUNITIVE damages in the Following Amounts:

(a) $29,000 EACH Against DEFENDANTS: MCCullough, HodgKins, JHonson, MOSE

(b) $10,000 EACH Against defendants, JHonson, MOSE.

(c) $20,000 EACH AGAINST defendants, GRIFFiS, MCKinney, GARDNER

[docket number 92 at 5].[2]

### III.    §1983 cases in general

Section 1983 creates a private right of action to redress the violation of federal law by those acting under color of state law. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S.

---

[2] Punitive damages are not available in lawsuits brought against municipal entities under §1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).

75, 82 (1984); *Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 19

(1981); *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980). It provides:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State . . . subjects, or causes to
> be subjected, any citizen of the United States or other person
> within the jurisdiction thereof to the deprivation of any rights,
> privileges, or immunities secured by the Constitution and laws,
> shall be liable to the party injured.

42 U.S.C. §1983. "Section 1983 'is not itself a source of substantive rights,' but merely provides

'a method for vindicating federal rights conferred elsewhere.'" *Albright v. Oliver*, 510 U.S. 266,

271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)); *accord Graham v.

Connor*, 490 U.S. 386, 393–94 (1989); *City of Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985);

*Young v. City of Killeen*, 775 F.2d 1349, 1352 (5th Cir. 1985); *Carbonell v. La. Dep't of Health

& Human Resources*, 772 F.2d 185, 188 (5th Cir. 1985).

   To prevail on a §1983 claim, the plaintiff must prove that a person acting under color of

state law deprived him of a right secured by the Constitution or laws of the United States. *See* 42

U.S.C. §1983; *Daniels v. Williams*, 474 U.S. 327, 330 (1986); *Augustine v. Doe*, 740 F.2d 322,

324–25 (5th Cir. 1984). Plaintiff must support his claims with specific facts demonstrating a

constitutional deprivation and may not simply rely on conclusory allegations. *See Schultea v.

Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995); *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990);

*Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986); *Angel v. City of Fairfield*, 793 F.2d

737, 739 (5th Cir. 1986); *Elliott v. Perez*, 751 F.2d 1472, 1482 (5th Cir. 1985).

   The plaintiff must also prove that the alleged constitutional or statutory deprivation was

intentional or due to deliberate indifference—not the result of mere negligence. *See Farmer v.

Brennan*, 511 U.S. 825, 828–29 (1994); *Davidson v. Cannon*, 474 U.S. 344, 348 (1986); *Daniels*,

474 U.S. at 328; *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). The negligent deprivation of life,

liberty, or property is not a constitutional violation. *See Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995); *Fraire v. City of Arlington*, 957 F.2d 1268, 1276 (5th Cir. 1992); *Herrera v. Millsap*, 862 F.2d 1157, 1160 (5th Cir. 1989); *Simmons v. McElveen*, 846 F.2d 337, 339 (5th Cir. 1988); *Young*, 775 F.2d at 1353. Moreover, to hold a defendant liable under §1983, the plaintiff must adduce facts establishing the defendant's participation in the alleged wrong. *See Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992); *Jacquez*, 801 F.2d at 793.

### IV.    *Pro se* pleadings

Allegations made in a *pro se* complaint are held "to a less stringent standard than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). To hold a *pro se* plaintiff to strict compliance "would be inequitable" as courts would punish a *pro se* plaintiff "for lacking the linguistic and analytical skills of a trained lawyer." *Perez v. United States*, 312 F.3d 191, 194–95 (5th Cir. 2002). To avoid such a result, "courts have adopted the rule that a *pro se* plaintiff's pleadings are liberally construed." *Id.* Even though pleadings by a *pro se* litigant are held to a less stringent standard, courts must be able to draw the reasonable inference from the pleadings that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007))). Courts should not dismiss a *pro se* complaint without "providing the plaintiff an opportunity to amend, unless it is obvious from the record that the plaintiff has pled his best case." *Hale*, 642 F.3d at 503. This Court finds that having filed an initial and two Amended §1983 Complaints as well as two Motions for Summary Judgment, Plaintiff has pleaded his best case.

### V.    Summary judgment standard of review

A District Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a); *see Funches v. Progressive Tractor & Implement Co., L.L.C.*, 905 F.3d 846, 849 (5th Cir. 2018). The Court must view the evidence in the light most favorable to the non–movant and draw all reasonable inferences in the non–movant's favor, refraining from making credibility determinations or weighing the evidence. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

Generally, the non–movant must bring forward evidence to create a genuine issue of material fact only *after* the movant shows entitlement to judgment as a matter of law. *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001) (emphasis added). That said, when, as here, a defendant asserts qualified immunity, the burden shifts to the plaintiff to demonstrate the defendant is not entitled to immunity by showing a violation of an actual constitutional right that was clearly established at the time of the alleged violation. *See Escobar v. Montee*, 895 F.3d 387, 393 (5th Cir. 2018); *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018).

The Fifth Circuit has held verified allegations in a prisoner–plaintiff's complaint allegations "are deemed competent summary judgment evidence." *Al–Raid v. Ingle*, 69 F.3d 28, 32 (5th Cir. 1995). Still, even verified allegations are insufficient to defeat summary judgment if they are nothing more than "conclusory allegations," "unsubstantiated assertions," or constitute "only a scintilla of evidence." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

As in every summary judgment case, the non–movant's evidence must raise more than some "metaphysical doubt as to the material facts." *Funches*, 905 F.3d at 849. A genuine issue of fact does not exist "if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *City of Alexandria v. Brown*, 740 F.3d 339, 350 (5th Cir. 2014). If the moving party supports his motion with evidence, the non-moving party cannot simply rely on conclusory legal allegations but must present affirmative evidence in order to defeat the motion

10

for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–255 (1986); *see also Clark v. America's Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997) (holding that unsupported allegations, affidavits, or depositions merely setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment).

Summary judgment is mandated if the non-movant fails to make a showing sufficient to establish the existence of an element essential to their case on which they bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Wenner v. Tex. Lottery Comm'n*, 123 F.3d 321, 324 (5th Cir. 1997). "In such a situation, there can be 'no genuine issue as to any material fact' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Id.* at 322–23. "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may...consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

The party opposing summary judgment must identify specific evidence in the record and articulate the precise manner in which that evidence supports his or her claim. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the non-movant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n. 7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the non-moving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it

will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

### VI.    Failure to exhaust administrative remedies against Defendants Nurse Atticus Mose, Commissioner Michael Gardner and Captain James McKinney

Defendants argue that Plaintiff's §1983 should be dismissed in part because Plaintiff did not exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA) as to Defendants Mose, Gardner, and McKinney concerning the alleged dental and Hepatitis C testing policies. [docket number 116 at 11–12]. According to Defendants in their Motion for Summary Judgment, "[i]n fact, the only time Atticus Mose is mentioned is in Grievance 22,152,291, which was not exhausted—never appealed." [*Id.*]. And no grievances were ever filed against Defendants McKinney and Gardner at all. [*Id.*].

The PLRA provides that prisoners wishing to sue must first exhaust available administrative remedies before filing a lawsuit. *Clifford v. Gibbs*, 298 F.3d 328, 330 (5th Cir. 2002) ("'exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'") (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)).

Specifically, §1997e(a) of the PLRA states that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. §1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). A properly exhausted claim is one which has "complete[d] the administrative review process in accordance with the applicable procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). Those rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Because exhaustion is an

affirmative defense, Defendants bear the burden of demonstrating that Plaintiff failed to exhaust available administrative remedies. *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010).

The Court proceeds with this summary judgment motion based on exhaustion first. *See Dillon*, 596 F.3d at 272–73 ("[E]xhaustion [under the PLRA] is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time"— thus, "[w]hen the defendant raises exhaustion as an affirmative defense, the judge should usually resolve disputes concerning exhaustion prior to allowing the case to proceed to the merits. If the plaintiff survives summary judgment on exhaustion, the judge may resolve disputed facts concerning exhaustion, holding an evidentiary hearing if necessary. Then, if the judge determines that the plaintiff has exhausted administrative remedies or that his or her failure to exhaust should be excused, the case may proceed to the merits." (footnote omitted)).

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997). And a factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins.,* 340 F.3d 233, 235 (5th Cir. 2003). Where, as here, the party moving for summary judgment "bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

The "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins.,* No. 3:04-CV-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007). The moving party must demonstrate that there are no genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law. *See, e.g., Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). On such a motion, the Court will, again, "draw all reasonable inferences in favor of the non–moving party." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

A factual dispute will preclude a grant of summary judgment if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986). The trial court may not weigh the evidence or make credibility determinations. *Id.* Conclusory allegations, speculation, improbable inferences, or a mere scintilla of evidence, however, are insufficient to defeat a summary judgment motion. *See Michaels v. Avitech, Inc.*, 202 F.3d 746, 754–55 (5th Cir. 2000). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Anderson*, 477 U.S. at 247. The Court now finds that, after drawing all reasonable inferences in favor of Plaintiff, Defendants Mose, Gardner, and McKinney have met their burden and are, therefore, entitled to summary judgment as a matter of law on the issue of exhaustion.

"[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules — rules that are defined not by the PLRA, but by the prison grievance process itself. Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to properly exhaust." *Jones v. Bock*, 549 U.S. 199, 218 (2007); *see Moussazadeh v. Tex. Dep't of Crim. Justice*, 703 F.3d 781,

14

788 (5th Cir. 2012) ("In determining exhaustion under the PLRA, we look to the processes established by the prison and the parties' use of these processes."); *Cantwell v. Sterling*, 788 F.3d 507, 509 (5th Cir. 2015) (per curiam) ("Exhaustion is defined by the prison's grievance procedures, and courts neither may add to nor subtract from them." (citations omitted)); *Kidd v. Livingston*, 463 F. App'x 311, 313 (5th Cir. 2012) (per curiam) ("It is the prison's requirements, not the [PLRA], that define the requirements of exhaustion"); *see also Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001) ("Nothing in the [PLRA] prescribes appropriate grievance procedures or enables judges, by creative interpretation of the exhaustion doctrine, to prescribe or oversee prison grievance systems" (footnote omitted)).

Thus, "[i]nmates need not exhaust all administrative remedies"—"only those that are 'available' to them," and, "[w]henever defendants claim a failure to exhaust, they have the burden to prove that the plaintiff did not exhaust administrative remedies that were actually available to him." *Davis v. Fernandez*, 798 F.3d 290, 294–95 (5th Cir. 2015) (citations omitted); *see Cowart v. Ervin*, 837 F.3d 444, 451 (5th Cir. 2016) ("The PLRA requires prisoners to exhaust such administrative remedies as are available prior to filing a §1983 action regarding prison conditions." (citations and internal quotation marks omitted)); *see also Ross v. Blake*, 136 S.Ct. 1850, 1860 (2016) ("[I]nterference with an inmate's pursuit of relief"—such as "through machination, misrepresentation, or intimidation" — "renders the administrative process unavailable." (collecting cases, including *Davis*, 798 F.3d at 295 ("Grievance procedures are unavailable ... if the correctional facility's staff misled the inmate as to the existence or rules of the grievance process so as to cause the inmate to fail to exhaust such process"))).

The ECDC, where Plaintiff was housed at the time of the complained-of incidents, is run by the Ector County Sheriff's Office. The ECDC has a two-step grievance policy that allows an

inmate to appeal his grievance to the Sheriff or Jail Administrator. [*See* docket number 116 at 24–27]. The first step of policy is for the inmate to actually file a grievance. [*Id.*]. The second step is to file an appeal with the Sheriff or Jail Administrator. [*Id.*]. These grievance procedures are contained in the ECDC Inmate Handbook, a copy of which Plaintiff received upon arrival. [*Id.*].

Plaintiff knew that the ECDC employed a two-step grievance procedure for inmates to challenge the alleged violations of their civil rights. [*See id.*]. Plaintiff used this procedure multiple times to assert a variety of complaints. [*See generally* docket number 116]. In fact, competent summary judgment evidence shows that there was a mandatory written grievance procedure at the ECDC, and that Plaintiff was indeed aware of these procedures. *See Brown v. Burnett*, No. Civ. A. 6:09-CV-156, 2010 WL 1997777, at *4 (E.D. Tex. May 17, 2010) (citing *Veloz v. N.Y.*, 339 F. Supp. 2d 505, 516 (S.D. N.Y. 2004) ("Plaintiff was most assuredly keenly aware of the grievance process.")). Despite Plaintiff's awareness of these rules, Plaintiff failed to grieve the incidents at issue in this complaint against Defendants Mose, Gardner, and McKinney concerning either the Hepatitis C or dental policies. Plaintiff failed to completely and finally apprise ECDC's administrator of his claims pertaining to Defendants Mose, Gardner, and McKinney.

Plaintiff did not even allege in any of his Complaints that he had exhausted or attempted to exhaust his administrative remedies. The strict approach followed by the Fifth Circuit required Plaintiff to file grievances and then to appeal them to the Sheriff or Jail Administrator *before* filing a lawsuit. By failing to arguably avail himself of both steps in the grievance process, Plaintiff has failed to exhaust his administrative remedies.

And exhaustion is mandatory. *Porter*, 534 U.S. at 524; *Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199, 214–15 (2007). Strict compliance with §1997e(a) is required in this Circuit. *Days*, 322 F.3d at 866; *see also Jones*, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").

Although a prisoner's failure to exhaust his administrative remedies "does not deprive courts of subject matter jurisdiction[,]" the exhaustion requirement is a "rule of judicial administration" which limits "access to the courts[.]" *Dillon*, 596 F.3d at 271–72 (citations omitted). Exhaustion "is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time[.]" *Id.* at 272. It is not enough to merely initiate the grievance process or to put prison officials on notice of a complaint; the grievance process must be carried through to its conclusion. *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). This is true regardless of whether the inmate's ultimate goal is a remedy not offered by the administrative process, such as money damages. *Id.* Moreover, exhaustion after suit has been filed is not sufficient. *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012).

As the *Gonzalez* Court noted:

> . . . District courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint. It is irrelevant whether exhaustion is achieved during the federal proceeding. Pre-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted.

*Gonzalez*, 702 F.3d at 788.

The extensive summary judgment evidence provided by Defendants establishes that Plaintiff failed to fully exhaust his administrative remedies concerning either the Hepatitis C or

the dental policies as to Defendants Mose, Gardner, and McKinney. [*See generally* docket number 116]. Based on the evidence before the Court, Plaintiff has failed to exhaust his administrative remedies as to these three Defendants.

Plaintiff has also failed to respond to Defendants' Motion for Summary Judgment, or otherwise meet his burden in demonstrating that administrative remedies were unavailable or inappropriate, or that pursuing them would have been futile.[3] *See Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (to be excused from the exhaustion requirement, the prisoner must show that administrative remedies were "unavailable or wholly inappropriate," or that it would be "patently futile" to pursue them). The Fifth Circuit has taken the position that exceptions to the exhaustion requirement only apply in "extraordinary circumstances," and that the prisoner bears the burden of demonstrating the futility or unavailability of administrative review. *Id.*

Plaintiff's failure to exhaust administrative remedies is an "incurable" defect. *See Nolasco v. CitiMortgage, Inc.*, No. Civ. A. H-12-1875, 2012 WL 3648414, at *7 (S.D. Tex. Aug. 23, 2012) (noting that Plaintiff's claims failed not because of a lack of specificity or clarity, but as a matter of law). In the somewhat recent *Jackson* case, the district court granted summary judgment for lack of exhaustion, and then also denied Plaintiff's motion for leave to amend. *Jackson v. Carrizales*, No. 2:18-CV-078-Z-BR, 2021 WL 3783353, at *5 (N.D. Tex. July 7, 2021) ("[A]mending these claims will not cure the deficiency of the current claim or Plaintiff's acknowledgment that he failed to exhaust his administrative remedies prior to filing suit in this instance.").

Any further amended complaints here would be similarly futile because even if Plaintiff were allowed to restate his claims, he would not be able to cure the lack of exhaustion. *See Kron*

---

[3] Plaintiff did file his own Motion for Summary Judgment but failed to address the exhaustion issue raised by Defendants in their Motion for Summary Judgment. [*See generally* docket numbers 122 & 116, respectively].

*v. Tanner*, No. Civ. A. 10-518, 2010 WL 2038168, at *1 (E.D. La. May 20, 2010) ("It is evident from the face of the motion that plaintiff has not yet fully exhausted his administrative remedies with respect to the claims arising out of the March 27 incident. Because those claims would therefore be subject to dismissal pursuant to §1997e(a), leave should be denied on the ground that the proposed amendments would be futile.") (citation omitted); *Brown v. U.S. Justice Dep't*, No. 04-379, 2007 WL 2811635, at *13 (W.D. Pa. Sept. 24, 2007) ("As Plaintiff has not exhausted his administrative remedies in accordance with the mandates of the PLRA, amending the complaint to add this claim would be futile."), *aff'd*, 271 F. App'x 142 (3d Cir. 2008).

Plaintiff has not raised any valid excuses for failing to exhaust his available administrative remedies *before* filing the complaint here, considering this, the Court now finds that amendment at this stage would not cure the deficiencies and would therefore be futile. *See DeLoach v. Woodley*, 405 F.2d 496, 496–97 (5th Cir. 1969) (The liberal amendment rules of Fed. R. Civ. P. 15(a) "do not require that courts indulge in futile gestures. Where a complaint, as amended, would be subject to dismissal, leave to amend need not be granted.").

Considering the statutory mandate of §1997e(a), this Court must dismiss this portion of Plaintiff's complaint *without* prejudice for failure to exhaust administrative remedies. *See Clifford v. Gibbs*, 298 F.3d 328, 333 (5th Cir. 2002) (dismissing without prejudice for failure to exhaust administrative remedies under §1997e(a)); *Scott v. Graham*, 54 F. App'x 405 (5th Cir. 2002) (unpublished per curiam) (same). Plaintiff's §1983 Hepatitis C and dental policies claims against Defendants Mose, Gardner, and McKinney are, thus, dismissed *without* prejudice for failure to exhaust administrative remedies.

## VII.    Official capacity claims against all remaining Defendants

A plaintiff can sue an individual state or municipal government official under §1983 through one of two theories of liability: (1) an individual capacity theory, or (2) an official capacity theory. See *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (discussing the importance of distinguishing between official capacity and individual capacity suits under §1983).

In an individual capacity suit, a plaintiff seeks to impose personal liability on a government official for actions he or she takes under color of state law. *See id.* at 165. By contrast, an official capacity suit against an individual government official "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Id.* Here, Plaintiff appears to have asserted §1983 claims against Defendants in their official capacities only. [*See* docket number 122 at 2]. A suit against Defendants in their official capacity is therefore a suit against their employer, Ector County, Texas. *Kentucky*, 473 U.S. at 165.

Municipalities, including counties and cities, may be held liable under §1983. *Hampton Co. Nat'l Sur., L.L.C. v. Tunica County*, 543 F.3d 221, 224 (5th Cir. 2008). A §1983 does not allow a municipality to be held vicariously liable for their employees' actions on a theory of *respondeat superior*, however. *See Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997); *Monell v. N.Y. Dep't of Soc. Servs.*, 436 U.S. 658, 691–95 (1978). Plaintiff must show an "underlying claim of a violation of rights," as well as "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Cox v. City of Dallas*, 430 F.3d 734, 748 (5th Cir. 2005). The official policy requirement means that municipal liability under §1983 is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479–80 (1986). However, insofar as

these remaining Defendants were sued in their official capacity, that portion of the suit fails, summary judgment on this claim is granted for Defendants, and the Court will now analyze the claims as asserted against Ector County, Texas alone.

### VIII.    *Monell* liability

A municipality may be a "person" under Section 1983 and thus held liable. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). But it may not be held liable simply because one of its employees is a "tortfeasor." *Id.* at 691. Instead, to hold a municipality liable under *Monell*, a plaintiff "must plead facts that plausibly establish that '(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right.'" *St. Maron Props., L.L.C. v. City of Houston*, 78 F.4th 754, 760 (5th Cir. 2023) (quoting *Peña v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018)).

### A.    Official policy or custom

An official policy can be shown by (1) an explicit policy statement, ordinance, regulation or decision officially adopted or promulgated; or (2) a custom that is the "persistent, widespread practice" of municipal official or employees and is "so common and well settled" that it "fairly represents municipal policy." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002) (footnote omitted); *see also St. Maron Props.*, 78 F.4th at 760. To be a custom, harms must come from more than just random acts or isolated incidents. *See Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992) ("Allegations of an isolated incident are not sufficient to show the existence of a custom or policy."). Instead, a plaintiff must allege a pattern of behavior with "sufficiently numerous prior incidents." *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989); *Pineda*, 291 F.3d at 329 n.12 (finding that eleven prior incidents like the alleged violation did not support a pattern). Such pattern of behavior "requires similarity and specificity"

21

to the harm plaintiff alleges. *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009). In other words, they must be "a pattern of abuses that transcends the error made in a single case." *Piotrowski v. City of Houston*, 237 F.3d 567, 582 (5th Cir. 2001).

"A policy or custom is official only 'when it results from the decision or acquiescence of the municipal officer or body with final policymaking authority over the subject matter of the offending policy.'" *Peterson*, 588 F.3d at 847 (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). The policymaker may constructively know of the policy if not actually. *See Moore v. LaSalle Mgmt. Co., L.L.C.*, 41 F.4th 493, 511 (5th Cir. 2022). A policymaker constructively knows of the policy only if the "violations were so persistent and widespread that they were the subject of prolonged public discussion." *Pineda*, 291 F.3d at 330 (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984) (en banc)). In short, the alleged custom must "have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice." *Davidson v. City of Stafford*, 848 F.3d 384, 396 (5th Cir. 2017) (emphasis added) (quoting *Peterson*, 588 F.3d at 850).

Plaintiff alleges not only an explicit policy statement, ordinance, regulation, or decision officially adopted or promulgated, but also alleges a custom or practice. Plaintiff focuses on one overarching policy he alleges is an Ector County policy, practice, or custom: [004.002(d)]. He claims Ector County had a policy or custom of failing to provide necessary dental care to truly indigent detainees and of denying Hepatitis C testing for them as well. Thus, the primary alleged custom is the focus.

The following are select excerpts from his dozens of grievances on the dental issue:

Appeal by the **Inmate** on **12/28/2023 at 7:10 AM**

LIKE I HAVE STATED I HAVE NO FAMILEY TO PAY FOR SOMETHING THUS COUNTY IS ACOUNTABEL FOR THAT IS THE CARE OF THE SHERIFF MIKE GRIFFS.THUS IS A COMPLAINT AGAINST THE COUNTY.FOR NOT HAVEING THE PROPER MEDICAL FOR THE JAIL PROTOCOL.WHY IS THE MEDICAL ANSWERING THUS COMPLAINT..

Appeal response by **Charge Nurse. L. Hodgkins** on **12/28/2023 at 9:28 AM**

Per Texas Jail commission inmates are responsible for any and all medical treatment and medications that are required while incarcerated. We are not denying you the opportunity to see a dentist, your family will need to pay for the appointment first and then an appointment will be scheduled and you will be transported to the appointment.

LH

[docket number 116 at 55].

Appeal response by **Director of Nurses. R. McCullough** on **09/15/2024 at 10:15 AM**

A broken tooth is painful and is treated with tylenol or aspirin off the cart. If there is an infection then it will be treated. You have been seen for your sick calls, however, there is no infection and you have been told to take tylenol or aspirin off the cart.
RM, DON

[*Id.* at 125].

Response by **Director of Nurses. R. McCullough** on **09/20/2024 at 8:55 AM**

Our policy is that if there is not an infection to the affected tooth we ask for the families assistance with getting the appointment paid for because at this time we do not have a contract with any outside dentist.
RM, DON

[*Id.* at 126]. But according to the written policies of the Ector County Detention Center (ECDC),

"no inmate shall be delayed/denied receiving dental services/treatments…due to their…inability

to pay." [*Id.* at 156] (excerpted below):

G. If inmate dental care / services (s) cannot be performed at the ECDC; it shall be the responsibility of the nursing director or his/her assistant to make arrangements for service/treatment as soon as is necessary for the inmates(s) well being. The nursing director or his/her assistant may choose to follow their protocol for contacting the family for dental care if this does not delay service/treatments immediately required or places the inmate(s) in harm's way. Medical administrative staff are authorized to have inmate (s) commissary account debited for dental and/or medical services and medications if the inmate (s) family or the inmate does not have the resources to pay for services/treatments. No inmate (s) shall be delayed/denied receiving dental services/treatments, medical services/treatments due to their or their family's inability to pay.

[*Id.*]. What occurred here was an 8-month delay in having his tooth finally extracted because there was no dentist contracted with the ECDC. So, while the policy itself mandates treatment regardless of ability to pay, the practice of implementing this policy failed Plaintiff in informing him for 8 months that there was nothing they could do other than Tylenol or aspirin, "magic mouthwash," or antibiotics when an infection was detected.

Appeal response by **Lt. S. Seibold** on **12/28/2023** at **8:28 AM**

I spoke with medical and you were given magic mouthwash and you need to use it. You were also told by Medical that your family needs to call the dentist and pay for an appt. and let medical know so that they can set up the appt.

[docket number 116 at 53].

Response by **Charge Nurse. L. Hodgkins** on **01/02/2024** at **8:56 AM**

You have not been denied dental treatment, you were placed on an antibiotic to treat the infection. You have the choice to have your family pay for a dental appointment, when it is paid for the jail will make the appointment and transport you to the appointment.

LH

[*Id.* at 61].

Response by **Director of Nurses. R. McCullough** on **03/08/2024** at **11:15 AM**

We will treat medical emergencies and conditions requiring medications. You have had numerous assessments of your complaint of tooth pain and there is no infection. The tooth needs to be pulled or it will continue to be painful but it is not a life threatening condition. We are providing transportation when your family is able to make arrangements with a dentist. Any medical treatment that is required is paid for by the county and charged to your commissary whether there is means to reimburse the county or not. You have access to pain medications twice daily on the cart. We are not inflicting pain upon you, you have a bad tooth and it needs to be pulled or will continue to cause you irritation, however, it is not a life threatening condition and there is no infection. I do not know of what comment you are referring to as no one has stated anything of that nature to you. We will continue to assess your complaint any time that you place a sick call. If there is no infection then you will be instructed to take tylenol or aspirin off the cart. If at any time it becomes infected you will be placed on antibiotics regardless of your ability to pay. RM,DON

[*Id.* at 75].

## B.    Promulgated by the municipal policymaker

Plaintiff sufficiently pleads a policymaker. In fact, he pleads that all Defendants were policymakers, which cannot be the case. "It is rare that a municipality will be found liable for an isolated unconstitutional act committed by one of its employees." *Harmon v. City of Arlington, Tex.*, 478 F. Supp. 3d 561, 573 (N.D. Tex. 2020), *aff'd*, 16 F.4th 1159 (5th Cir. 2021); *see Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). "Municipalities cannot be held liable under [§]1983 on a respondeat superior theory, and a [county] is not liable where an injury is caused solely by one of its employees." *Harmon*, 478 F. Supp. 3d at 573 (citing *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978)).

A *Monell* claim requires the municipal policymaker to promulgate the policy. *See St. Maron Props., L.L.C. v. City of Houston*, 78 F.4th 754, 760 (5th Cir. 2023). The relevant policymaker is determined by state law. In Texas, the sheriff is a county's "final policymaker in the area of law enforcement" and in county jails. *Colle v. Brazos Cnty.*, 981 F.2d 237, 244 (5th Cir. 1993); *Feliz v. El Paso Cnty.*, 441 F. Supp. 3d 488, 503 (W.D. Tex. 2020).

"[A] suit against a governmental officer 'in his official capacity' is the same as a suit 'against [the] entity of which [the] officer is an agent[.]'" *McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781, 785 n.2 (1997) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Here,"[t]he official-capacity claims and the claims against the governmental entity essentially merge." *Turner v. Houma Mun. Fire and Police Civ. Serv. Bd.*, 229 F.3d 478, 485 (5th Cir. 2000). "If the claims against an official in his official capacity seek identical relief as claims against a governmental entity, the official capacity claims may be dismissed as duplicative." *Notariano v. Tangipahoa Par. Sch. Bd.*, 266 F. Supp. 3d 919, 928 (E.D. La. 2017) (citing *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001)).

Here, Plaintiff has alleged that Sheriff Griffis was the relevant policymaker. As all Defendants were sued in their official capacity only, and as only Sheriff Griffis is the relevant policymaker and Ector County the relevant governmental entity, Defendants Commissioner Michael Gardner, Captain James McKinney, Nurse Robin McCullough, Nurse Shelly Jhonson, and Nurse Atticus Mose,[4] must be dismissed from this suit as duplicative.

In sum, Plaintiff's suit against all Defendants in their official capacity duplicates his suit against Ector County. Because the official capacity claims allege the same claims as those against Ector County they are unnecessary to establish the existence of a municipal policymaker, Plaintiff's claims against all the Defendants in their official capacity merge with those against Ector County. *See Notariano*, 266 F. Supp. 3d at 928. Accordingly, the Court will dismiss these claims. *See Castro Romero*, 256 F.3d at 355 (affirming dismissal of duplicative official capacity claim). Plaintiff's claim for §1983 relief hereafter proceed only against Ector County.

### C.    Was the moving force behind the violation of a constitutional right.

---

[4] Gardner, McKinney, and Mose were already dismissed earlier because of Plaintiff's failure to exhaust.

The final *Monell* element requires that the alleged policy or custom is the moving force behind the constitutional violation. *See St. Maron Props.*, 78 F.4th at 760. To prevail, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). The degree of culpability Plaintiff needs to allege is at least "deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow" the officials' decisions. *Id.* at 411, 404 (plaintiff must demonstrate "deliberate conduct" on the part of the municipality). Deliberate indifference is an "extremely high standard to meet." *Austin v. City of Pasadena*, 74 F.4th 312, 328 (5th Cir. 2023) (quoting *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001)). It requires showing "a pattern of similar violations" that come from a policy or custom "that is so clearly inadequate as to be 'obviously likely to result in a constitutional violation.'" *Burge v. St. Tammany Par.*, 336 F.3d 363, 370 (5th Cir. 2003) (quoting *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001)).

Alternatively, deliberate indifference may be shown even for a single incident under a limited exception to the pattern requirement, if "the facts giving rise to the violation are such that it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy." *Burge*, 336 F.3d at 373. Through either route, showing "simple or even heightened negligence will not suffice." *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010) (quoting *Piotrowski*, 237 F.3d at 579). Instead, the jail official must both "know of and disregard an excessive risk to inmate health or safety." *Est. of Henson v. Wichita Cnty.*, 795 F.3d 456, 464 (5th Cir. 2015). This requires both being "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and then also

27

actually "draw[ing] the inference." *Id.* (quoting *Est. of Krajca*, 440 F. App'x 341, 343 (5th Cir. 2011)). Nor will pleading facts that show "[u]nsuccessful medical treatment" or "medical malpractice" sufficiently allege deliberate indifference on the part of jail officials. *Ford v. Anderson Cnty.*, 102 F.4th 292, 307 (5th Cir. 2024) (quoting *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (alteration in original).

Plaintiff does not sufficiently plead facts alleging the deliberate indifference culpability standard was met. Plaintiff pleads facts that, assumed true, cannot sustain "deliberate conduct" on the part of jail officials. *Brown*, 520 U.S. at 404. First, Plaintiff alleges that the County's desire to save tax-payer money, it instituted a policy, whether formal or informal, that denied him dental care for 8 months. Second, he claims that this same policy, whether formal or informal, denied him Hepatitis C testing and treatment. To tie it all together, Plaintiff claims that jail officials knew Plaintiff was suffering from an alternately infected and then broken molar, as well as from Hepatitis C and still deliberately chose not to treat him for either. But of course, conclusory statements are not entitled to an assumption of truth. *See Iqbal*, 556 U.S. at 678–79. Thus, Plaintiff must argue these two allegations sufficiently plead deliberate indifference on the part of jail officials.

But Plaintiff cannot do such. First, as explained, Plaintiff does not sufficiently demonstrate a pattern of similar, past violations arising from a policy or custom that would be "obviously likely to result in a constitutional violation." *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001). At best, Plaintiff alleges facts demonstrating jail officials would fail to medically care for detainees by denying Hepatitis C testing. Nowhere does Plaintiff allege a pattern where detainees with similar serious medical conditions simply had no treatment at all. Under the single incident approach, Plaintiff does not demonstrate facts alleging deliberate

indifference either. Jail officials could not find it highly predictable that a detainee who asserted that the excessive use of Tylenol and aspirin to treat his painful tooth would somehow, inexplicably, lead to Hepatitis C. *Burge*, 336 F.3d at 373.

Even if Plaintiff's allegations that jail officials knew of Plaintiff's alleged Hepatitis C diagnosis, assumed true, Plaintiff's facts do not allege jail officials deliberately chose not to treat him out of indifference. In other words, Plaintiff does not allege that jail officials, even if they knew about his alleged Hepatitis C diagnosis, "actually 'dr[ew] the inference'" that a "substantial risk of serious harm exists." *Rangel v. Wellpath, LLC*, No. 5:23-cv-128, 2024 WL 1160913, at *13 (N.D. Tex. Mar. 18, 2024) (quoting *Est. of Henson*, 795 F.3d at 464).

Also, assuming that jail officials knew of Plaintiff's bad molar, Plaintiff's facts do not allege jail officials deliberately chose not to treat him out of indifference. In other words, Plaintiff does not allege that jail officials, even if they knew about his bad tooth, "actually 'dr[ew] the inference'" that a "substantial risk of serious harm exists." *Rangel*, 2024 WL 1160913, at *13.

At best, Plaintiff pleads negligence or perhaps even malpractice, neither of which is actionable under §1983. Jail officials, hearing Plaintiff's complaint about stomach pain could have run additional tests to see if it was his liver causing the pain. And while it is utterly delusional to allege one can contract Hepatitis C from overuse of aspirin and/or Tylenol, those medications could have no doubt caused the stomach pain he complained of. And that inquiry should have informed whether he needed additional treatment while detained. But Plaintiff has alleged no more than jail officials may have known Plaintiff's stomach hurt.

Plaintiff does not even allege that he has ever actually been diagnosed with Hepatitis C, only that he wanted testing for it. Setting aside Plaintiff's utterly conclusory assertions,

Plaintiff's pleadings may rise to "simple or even heightened negligence." *Valle*, 613 F.3d at 542

(quoting *Piotrowski*, 237 F.3d at 579). These "will not suffice." *Id.* As to Hepatitis C and

deliberate indifference—a "serious medical need" is one for which treatment is recommended or

for which the need is so apparent that even laymen would recognize that care is required. *Sims v.*

*Griffin*, 35 F.4th 945, 949 (5th Cir. 2022). "[F]acts underlying a claim of 'deliberate

indifference' must clearly evince the medical need in question and the alleged official

dereliction." *Johnson*, 759 F.2d at 1238. Complaining of stomach pain in the wrong area of the

stomach to be the liver cannot create a duty to test for Hepatitis C on the part of Ector County.

---

Response by **Charge Nurse. L. Hodgkins** on **10/18/2024** at **8:29 AM**

You were called down and assessed by Shelly, she instructed you that the pain that you were
having was not on the side of the body where your liver is located. This facility does not test for or
treat Hepatitis C, the treatment is extremely expensive and there are criteria that must be met for
treatment. When you leave this facility you may seek testing and treatment. As it has been
explained to you multiple times you are not a "ward" of Ector County, when in the Ector County
jail you are responsible for any and all medical treatment financially. You do not have a follow up
appointment for the dentist.

LH

[*Id.* at 149].

"To act with deliberate indifference, a state actor must consciously disregard a known

and excessive risk to the victim's health and safety." *Hernandez ex rel. Hernandez v. Texas*

*Department of Protective and Regulatory Services*, 380 F.3d 872, 880 (5th Cir. 2004) (citations

omitted). The deliberate indifference standard is an extremely high one. *Sanchez v. Young*

*County, Texas*, 866 F.3d 274, 280 (5th Cir. 2017) (citing *Stewart v. Murphy*, 174 F.3d 530, 534

(5th Cir.), *cert. denied*, 528 U.S. 906 (1999)), *cert. denied*, ⸺ U.S. ⸺, 139 S.Ct. 126 (2018).

Conduct classified as deliberately indifferent "must be more than mere or even gross negligence"

to establish a violation of a clearly established constitutional right. *Hare v. City of Corinth,*

*Mississippi*, 74 F.3d 633, 645 (5th Cir. 1996) (en banc).

The Fifth Circuit has established that the "deliberate indifference" standard applies to a pretrial detainee's claims involving the denial of medical or dental care under §1983. *See, e.g., Hare,* 74 F.3d at 647–48. Under this standard, an episodic act or omission by a governmental employee does not violate a pretrial detainee's constitutional right to medical care unless the pretrial detainee demonstrates that the employee acted or failed to act with subjective deliberate indifference to his serious medical needs. *Id.* at 643, 647–48. "'For an official to act with deliberate indifference, 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999) (quoting *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Such indifference on the part of a government employee can be evidenced by intentionally denying or delaying access to medical care or by intentionally interfering with the treatment prescribed. *Id.* (citing *Estelle at* 104–05).

Liability also requires "more than ordinary lack of due care for the prisoner's interests or safety." *Farmer*, 511 U.S. at 835 (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). In other words, mere negligence on the part of a governmental employee does not constitute deliberate indifference. *Wilson v. Seiter*, 501 U.S. 294, 305 (1991); *see also Trevino v. Hinz*, 751 F. App'x 551, 554 (5th Cir. 2018) (per curiam) ("We doubt that Plaintiffs have alleged facts giving rise to deliberate indifference as to Officers Hauck and Hinz. Even read favorably to Plaintiffs, their allegations may depict negligence on the officers' part in not initially realizing the gravity of Trevino's condition and in not calling an ambulance sooner."). That is, a "[state actor] must have the subjective intent to cause harm." *Mace v. City of Palestine*, 333 F.3d 621, 626 (5th Cir. 2003) (citing *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)); *see generally Pengelly v. City of*

*Hurst, Texas*, No. 4:17-CV-0281-O (N.D. Tex. March 16, 2018) (O'Connor, J.) (docket entry 56) (unpublished opinion).

"Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference[.]" *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006); *Hunt v. Pierson*, 730 F. App'x 210, 213 (5th Cir. 2018) (per curiam). "It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)); *see also Trevino*, 751 F. App'x at 555 ("[A]n officer's failure to immediately recognize ambiguous symptoms as a medical emergency does not amount to deliberate indifference."). Plaintiff failed to show that jail employees acted with deliberate indifference or pursuant to a policy or established custom to deny adequate dental or Hepatitis C care to pretrial detainees. *See generally Grotz v. City of Grapevine*, No. 4:08-CV-344-Y, 2009 WL 3398890 (N.D. Tex. Oct. 22, 2009). Because Plaintiff has not proved that jail employees acted with deliberate indifference, there is no underlying constitutional violation in this case. *See Hines v. Henson*, 293 F. App'x 261, 263 (5th Cir. 2008) (per curiam).

> Courts have recognized that "[p]risoners generally have more extensive dental problems that the average citizen." *Ramos v. Lamm*, 639 F.2d 559, 576 (10th Cir. 1980); *Mounce v. Doe*, Civ. No. 12-669, 2014 WL 2587698, at *12 (E.D. La. 2014) (summarizing testimony from a dentist, who observed that inmates frequently come into a county jail with "terrible, terrible, terrible teeth" because they do not otherwise get regular dental care). It is undisputed that tooth decay, if left untreated, is progressive and can result in extreme pain, loss of tooth structure, and ultimately loss of the affected tooth. Thus, courts have recognized that access to dental care in prison is an "important medical need" for conditions that cause pain, discomfort, or otherwise pose a threat to an inmate's health. *Ramos*, 639 F.2d at 576; *see also, e.g., Hartsfield v. Colburn*, 491 F.3d 394, 397 (8th Cir. 2007)

("Toothaches can be excruciatingly painful, and dental care is an important part of proper health care [in the prison environment].");
*Jones v. Coughlin*, 623 F.Supp. 392, 404 (S.D.N.Y. 1985) (concluding that where pain and discomfort are alleged "restorative services" such as filling cavities, doing root canal work, and crowning broken teeth are "serious medical needs as the law defines that term").

It is beyond dispute that the government has an "obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). A prison official's failure to provide medical care with deliberate indifference to a prisoner's serious medical needs can constitute "unnecessary and wanton infliction of pain," which is prohibited by the Eighth Amendment. *Id.* at 104, 97 S.Ct. 285 (citation omitted). Although a non-indigent prisoner may be expected to pay for some or all of his medical expenses, if he has the means to do so, it is clearly established that "[p]rison officials may not, with deliberate indifference to the serious medical needs of the inmate, opt for 'an easier and less efficacious treatment' of the inmate's condition' ...[, n]or may they condition provision of needed medical services on the inmate's ability or willingness to pay." *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (citation and internal quotation omitted); *see also Weeks v. Hodges*, 871 F.Supp.2d 811, 821–22 (N.D. Ind. 2012) (observing in a case about dental care that prison officials may not condition medical treatment on a prisoner's ability to pay) (citing *Martin v. Debruyn*, 880 F.Supp. 610, 615 (N.D. Ind. 1995) ("A prison official who withholds necessary medical care, for want of payment, from an inmate who could not pay would violate the inmate's constitutional rights if the inmate's medical needs were serious ...."); *Cannon v. Mason*, 340 Fed.Appx. 495, 499 n.3 (10th Cir. 2009) ("[A]n Eighth Amendment violation concerning medical charges only occurs if prison officials deny an inmate medical treatment due to a lack of funds or condition the provision of needed medical services upon an inmate's ability to pay ....") (citations omitted)). Simply put, "[i]f the prisoner cannot pay, he must be maintained at state expense; it cannot deny minimal medical care to poor inmates." *Bihms v. Klevenhagen*, 928 F.Supp. 717, 718 (S.D. Tex. 1996) (citing *Estelle*).

*Baughman v. Garcia*, 254 F. Supp. 3d 848, 874–75 (S.D. Tex. 2017), *aff'd sub nom. Baughman v. Seale*, 761 F. App'x 371 (5th Cir. 2019) (footnotes omitted).

There is authority for the proposition that a policy of denying treatment for painful dental conditions "unless the inmate is willing to submit to extraction of a tooth at county expense, or has the resources to employ a local dentist for an emergency filling[,] ... violates the requirement that reasonably adequate medical care be supplied to persons in custody." *Heitman v. Gabriel*, 524 F.Supp. 622, 627 (W.D. Mo. 1981); *see also Stack v. McCotter*, 79 F. App'x 383 (10th Cir. 2003) (holding that summary judgment was inappropriate where an inmate was denied care under a prison policy which explicitly stated, "[d]o not ask to go to the dentist unless you are willing to have your tooth pulled"); *Beamon v. Parkland Hosp.*, Civ. No. 3:08-0693, 2008 WL 4061417, at *3 (N.D. Tex. Aug. 20, 2008) (concluding without reaching the merits that an inmate who alleged that he was refused treatment other than extraction stated a claim under the Eighth Amendment standard); *Mitchell v. Liberty*, Civ. No. 8-341-B-W, 2009 WL 33435, *4 (D. Me. Jan. 5, 2009) (concluding that a detainee articulated a possible constitutional violation in connection with a county-wide policy of denying dental care other than emergency extractions).

In that respect, offering extraction only as treatment for tooth decay may be unconstitutional depending on the facts of the case. *See Chance v. Armstrong*, 143 F.3d 698, 703–04 (2d Cir. 1998) (recognizing that a dentist's decision to recommend extraction rather than fillings could be the product of sound medical judgment, but it could be deliberate indifference if the dentist had a monetary incentive or other ulterior motive); *see also Harrison v. Barkley*, 219 F.3d 132, 137–39 (2d Cir. 2000) (overturning summary judgment on qualified immunity for a prison dentist who left a cavity unfilled for one year because the inmate would not consent to extraction of an adjacent tooth); *Pipes v. North Dakota*, Civ. No. 1:07-00067, 2007 WL 4661655, *8–9 (D.N.D. Dec. 10, 2007) (suggesting that an extraction-only policy may give rise to an Eighth Amendment violation in certain circumstances unless evidence makes clear that

extraction is a "medically preferred treatment"). Thus, it appears somewhat established that offering extraction only instead of a filling for tooth decay can violate the Eighth Amendment if extraction is not medically necessary at that time. *See Chance*, 143 F.3d at 703–04.

Although Plaintiff might have presented enough evidence to survive summary judgment on this limited issue, it is not clear that he can prevail. *See Greywind v. Podrebarac*, Civ. No. 1:10-006, 2011 WL 4750962, *8 n.6 (D.N.D. Sept. 12, 2011) ("[G]iven the weight of existing authority, any prisoner claim for better dental care than what can be afforded by the poor and working poor in this country would face an uphill battle."); *see also Rumierz v. Sheriff*, Civ. No. 02-6146, 2006 WL 3068577 (D.N.J. Oct. 27, 2006) (noting that an extraction-only policy "has been deemed constitutionally offensive," but that "if defendants can establish that extraction was the appropriate medical decision given the condition of [plaintiff's] teeth at the time of treatment, the legal implications of an extraction-only policy become less clear").

Plaintiff's dental claim sounds only in common law negligence or dental malpractice and does not constitute deliberate indifference or state a claim under the Eighth Amendment. *See Estelle*, 429 U.S. at 105, 97 S.Ct. 285 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."); *see also Stewart* ("[A]lthough inadequate medical care may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not.").

Allegations of malpractice, negligence, or unsuccessful treatment fail to establish deliberate indifference. *Gobert*, 463 F.3d at 346. Similarly, an inmate's disagreement with the treatment provided does not give rise to a constitutional claim. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). "Even if a lapse in professional judgment occurred, any such failure

amounts to mere negligence or malpractice, and not a constitutional violation." *Evans v. Brouwer*, No. 9:13-CV-302, 2017 WL 4216067, at *1 (E.D. Tex. Sept. 22, 2017) (internal citations omitted). An inmate must demonstrate that prison staff "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs" to state a viable Eighth Amendment claim for deliberate indifference to serious medical needs. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

And although the treatments Plaintiff ultimately received may have differed than those he requested, this alone does not constitute a constitutional violation. *Norton*, 122 F.3d at 292 (holding that an inmate's disagreement with the treatment provided does not give rise to a constitutional claim). Here, the authenticated records rebut Plaintiff's claims of deliberate indifference on the part of Ector County. *See Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (holding that "[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference").

Dental needs can form the basis of a deliberate indifference claim. *See Carlucci v. Chapa*, 884 F.3d 534, 539 (5th Cir. 2018) (citing *Thompson v. Williams*, 56 F.3d 1385, 1385 (5th Cir. 1995)); *Huffman v. Linthicum*, 265 F. App'x 162, 163 (5th Cir. 2008). The nurses in charge of his dental care may have been negligent, but they were not deliberately indifferent to his dental needs. Such a claim cannot be based on an inmate's preference for one dental treatment over another. *Leachman v. Harris Cnty., Tex.*, 779 F. App'x 234, 238 (5th Cir. 2019) (citing *McQueen v. Karr*, 54 F. App'x 406 (5th Cir. 2002)) (per curiam) (finding that inmate's preference for restorative treatment over extraction was frivolous and failed to state a claim); *see*

*also Sanders v. United States*, 438 F.2d 918, 919 (5th Cir. 1971) (finding that prison officials are not responsible for inmate's suffering caused by his refusal to undergo dental extractions).

But while inadequate dental care "may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999). And an inmate's mere disagreement with the type of medical care he receives is insufficient to support an Eighth Amendment violation. *See Norton*, 122 F.3d at 292. A careful review of Plaintiff's factual allegations, read consistently with the authenticated records, reveals that he was dissatisfied with the treatments offered to him. This is insufficient to state a claim under §1983. *McQueen v. Karr*, 54 F. App'x 406, at *1 (5th Cir. 2002)) (per curiam).

Plaintiff's factual allegations, even when accepted as true, fail to plausibly state an official capacity claim against Sheriff Griffis or a claim for municipal liability against Ector County. Plaintiff has failed to identify a policy or persistent, widespread practice on the part of Ector County that plausibly violated his rights. His allegations that the Sheriff ignored his complaints, failed to protect him, and showed deliberate indifference to his serious medical needs are each conclusory and without plausible factual support, as explained above. Nor has Plaintiff plausibly alleged that any such policy or practice, if it existed, was the moving force behind a violation of his rights.

The policy Plaintiff alleges was behind his mistreatment was identified repeatedly by him as [004.002(d)]. [*See generally* docket number 122]. The only item in all the attached materials which possibly connected to that cite is Tex. Code Crim. Proc Art. 104.002(d), which states: "A person who is or was a prisoner in a county jail and received medical, dental, or health related services from a county or a hospital district shall be required to pay a reimbursement fee for such

37

services when they are rendered." As Plaintiff has not sued the State of Texas, he cannot equate a Texas statute as the underlying Ector County policy which led to his alleged harm. This "policy" Plaintiff takes offense to, is simply a statute by the State of Texas with which Ector County was trying to comply. A §1983 against Ector County is not the vehicle by which to challenge the constitutionality of a statute promulgated by the State of Texas. Any specific facts alleged are of course assumed true at this stage, but conclusory claims that a policy or custom existed that caused him harm are not.

Plaintiff was always treated when he complained of tooth pain, he was not treated the way he thought he should have been, but he was treated nonetheless. Every time. For 8 months he was treated; with "magic mouthwash," Tylenol, aspirin, and antibiotics as necessary. Summary judgment is granted for Defendants based on a failure to establish deliberate indifference to Plaintiff's dental or Hepatitis C needs.

## IX.    Violations of Texas Commission on Jail Standards

To the extent Plaintiff alleges a claim based on purported violations of the Texas Commission on Jail Standards, this claim fails. "It is well established that violations of state law are not actionable under §1983," and the protocols mandated by Texas law and adopted by the Texas Commission on Jail Standards "do not establish constitutional rights to treatment for detainees, nor do they so purport." *Whitt v. Stephens Cnty.*, 236 F. App'x 900, 902–03 (5th Cir. 2007); *see also San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 701 n.4 (5th Cir. 1991) ("Violation of a state statute is not actionable under §1983.").

## X.    Official immunity defense raised by Defendants

The Court recognizes that Defendants also raised the affirmative defense of official immunity as a ground for summary judgment. That said, official immunity only applies to state-

law claims. *Haggerty v. Texas S. Univ.*, 391 F.3d 653, 658 (5th Cir. 2004); *Lloyd v. Birkman*, 127 F. Supp. 3d 725, 776 (W.D. Tex. 2015). Plaintiff only raised federal claims under §1983. He has not raised any state-law claims to which official immunity would apply. Accordingly, the Court will not address this purported basis for summary judgment.

### XI.    Conclusion

Plaintiff's Motion for Summary Judgment is denied. [docket number 122]. Defendants' Motion for Summary Judgment is granted. [docket number 116]. Plaintiff's Hepatitis C and dental policy claims against Defendants Gardner, McKinney, and Mose are dismissed *without* prejudice for failure to exhaust administrative remedies. Defendants Gardner, McKinney, McCullough, Jhonson, and Mose, are dismissed from this suit as duplicative because they were sued only in their official capacities. Plaintiff's Hepatitis C and dental policy claims against Defendants Griffis, and Ector County, Texas are dismissed *with* prejudice for failure to establish deliberate indifference.

It is so **ORDERED**.

SIGNED this 1st day of August, 2025.

DAVID COUNTS
UNITED STATES DISTRICT JUDGE